In re Disqualification of Hoover.

In re Guardianship of Santrucek.

[Cite as *In re Disqualification of Hoover,*
113 Ohio St.3d 1233, 2006-Ohio-7234.]

(No. 06–AP–103—Decided October 20, 2006.)

Moyer, C.J.

{¶ 1} Attorney Paul D. Harmon—counsel for a daughter of the ward listed in the caption above—has filed an affidavit with the clerk of this court under R.C. 2101.39 and 2701.03, seeking the disqualification of Judge Robert Hoover from acting on any further proceedings in case No. 2006–0367 in the Court of Common Pleas of Licking County, Probate Division. Harmon's sister, Susan Winkfield, has filed an affidavit as well.

{¶ 2} Harmon explains that he ran unsuccessfully for judicial office against Judge Hoover in 1996, and he indicates that the campaign grew heated at times. Harmon was also unsuccessful in a judicial race in 2004, and he filed an election contest to challenge the official results. Affiant Winkfield states that while that election contest was pending in 2005, she began working as a volunteer intern at Judge Hoover's court. The affiants explain that when the judge learned that Winkfield is Harmon's sister, the judge summoned her to his office and questioned her about her role in the pending election contest. Winkfield states that she felt that the judge was accusing her of spying on his court, and she alleges that the judge told her that Harmon has "no respect" for the court. The judge terminated Winkfield from the internship program.

{¶ 3} With respect to the case below, Harmon contends that Judge Hoover has demeaned him in court, has accused him of coming to court with a "bad attitude," and has prevented him from presenting his client's case. Harmon asks that Judge Hoover be disqualified from any cases in which Harmon represents a party.

{¶ 4} Judge Hoover has responded in writing to the affidavit. He describes the allegations in the affidavit as "truly bizarre," "absurd," "unprofessional," and "frivolous," and he states that he has treated Harmon's client with respect at all times. The judge contends that Harmon is "obsessed with his election defeats," and he suggests that Harmon may have "a serious problem which requires

attention." The judge labels several of affiant Winkfield's statements as false, and he states that he has given Harmon a full opportunity to present evidence and arguments in court.

{¶ 5} I conclude that the judge should be disqualified from this and other cases in which attorney Harmon represents a party. I reach that conclusion to ensure the parties and the public that the underlying legal issues before the trial court will be resolved dispassionately and fairly, and to make certain that the outcome of this case and others will not be affected by the judge's seemingly firm—and very negative—opinion about attorney Harmon.

{¶ 6} The tone and content of the judge's response to the affidavit stand in sharp contrast to the tenor of Harmon's affidavit itself. While Harmon's request for disqualification is even-tempered and straightforward in its recitation of the facts as he sees them, the judge's response is laced with invectives against Harmon, complete with several exclamation points. The judge characterizes the affidavit as having painted a "very graphic, grim and terrible picture" of him, but I do not see the affidavit in the same light. Had the judge calmly stated that he holds no bias or prejudice in this case, and had he offered a short and even-tempered explanation for his actions, I likely would not have been inclined to grant the affiants' request. Instead, however, the judge fired off a lengthy response that bristles with caustic phrases about Harmon and his actions. That response suggests that the judge is not able to view the statements in the affidavit objectively, and it calls into doubt his ability to preside fairly and impartially over cases in which Harmon is involved.

{¶ 7} A judge, "notwithstanding the conduct of litigants or counsel, has an ethical obligation to conduct himself or herself in a courteous and dignified manner that does not convey the appearance of bias or prejudice toward litigants or their attorneys." *In re Disqualification of Cleary* (2000), 88 Ohio St.3d 1220, 1222–1223, 723 N.E.2d 1106. See, also, Canon 3(B)(4) of the Ohio Code of Judicial Conduct (directing judges to be "patient, dignified, and courteous" to parties and their lawyers). A judge must not let his or her views about or frustrations with an attorney "so infect the case that a disinterested observer might reasonably question the judge's ability to evaluate fairly and objectively both the attorney's future work and the parties' legal interests." *In re Disquali-fication of Squire*, 105 Ohio St.3d 1221, 2004-Ohio-7358, 826 N.E.2d 285, ¶ 5. In addition, if a judge's words or actions convey the impression that the judge has developed a "hostile feeling or spirit of ill will," *State ex rel. Pratt v. Weygandt* (1956), 164 Ohio St. 463, 469, 58 O.O. 315, 132 N.E.2d 191, or if the judge has reached a "fixed anticipatory judgment" that will prevent the judge from hearing the case with "an open state of mind * * * governed by the law and the facts," id., then the judge should not remain on the case.

{¶ 8} The judge's response in this case reinforces the affidavits' point that Harmon appears to be someone against whom the judge holds a fixed and longstanding resentment, and the almost condescending tone of that response leaves the reader wondering why the judge felt compelled to so forcefully attack the character – and even the mental stability – of an attorney who represents a party in a pending case. The judge's own words might very well cause a reasonable and objective observer to wonder how and whether a judge who could pen such a lengthy diatribe against an attorney could later sit fairly and impartially on cases involving that same attorney.

{¶ 9} The unfortunate election-related history described by the judge and the affiants appears to pose an impediment to the judge's ability to resolve any remaining legal and factual issues in a way that will appear objective and fair to the parties and the public. "It is of vital importance that the litigant should believe that he will have a fair trial," *State ex rel. Turner v. Marshall* (1931), 123 Ohio St. 586, 587, 176 N.E. 454, and in this case, it seems fair to say that attorney Harmon no longer holds that belief. Whether that belief is accurate, an objective observer who has read the affidavits and the judge's response might reasonably question whether either Harmon or the judge can now set aside his seemingly fixed views of the other.

{¶ 10} In recognition of the unique standards of professionalism required of judges, this court adopted "A Judicial Creed" in 2001 on the recommendation of the Supreme Court Commission on Professionalism. By doing so, the court sought to remind all judges of the high standards expected of them by the public they serve. Three provisions of that creed bear repeating here:

{¶ 11} "I know that I must not only be fair but also give the appearance of being fair.

{¶ 12} "I recognize that the dignity of my office requires the highest level of judicial demeanor.

{¶ 13} "I will treat all persons, including litigants, lawyers, witnesses, jurors, judicial colleagues, and court staff with dignity and courtesy and will insist that others do likewise." A Judicial Creed, Appendix V to Gov.Bar R. XV (eff. May 2001).

{¶ 14} I hope that Judge Hoover and other Ohio judges will continue to work toward the aspirational standards described in the Judicial Creed. In the meantime, however, I conclude that Judge Hoover must be disqualified from further proceedings in the case and from all other cases involving attorney Harmon, because a reasonable and objective observer familiar with the facts presented to me might reasonably question the judge's ability to preside fairly and impartially in Harmon's cases.

{¶ 15} For the reasons stated above, the affidavit of disqualification is granted for the case listed in the caption above and for all other cases in which attorney Harmon represents a party or is himself a party. The case is returned to the trial court for reassignment to a different judge in Licking County.